Kirkpatrick, C. J.
— From this case it is manifest, the plaintiff below, sets up no claim to a several fishery in this river, by reason of any grant or purchase of soil, either adjacent to, or covered by its waters.
How far, therefore, the purchase of lands in JSTew Jersey, bounding on navigable rivers, in which the tide ebbs and Hoavs, may carry Avith it the right of soil [286] between high and low Avater mark; how far it may carry with it the adjoining shoals, or flats covered with Avater, but not of sufficient depth for navigation; how far it may vest in the purchaser, the right of the soil usque adjilum aqua even to the center of the channel, and thereby give a several fishery in such Avaters; and hoAv far, independently of any of these considerations, a several fishery may be supported, in any of our waters, by long usage and general consent, are questions Avhich in no Avay come in vieAV in this case. If it should become necessary to agitate them hereafter, they must rest upon their own merits.
Here, the plaintiff has thrown his oysters into a public river, where all the inhabitants have a common right of fishery.
[*] For the plaintiff j it is urged, that the property of the oysters having been once vested in him by occupancy, it could not be divested but by his oavu voluntary act, or by operation of law; by abandonment, with intent that it should fall again into the common stock. And for this he cited, Domat, 476.
*372 The principle is correct enough; but how does it apply ? How is the intent to be known ? Certainly, in most cases, only by the act itself. Suppose a man was to take a deer in a forest, and be simple enough to let it go again in the same forest, saying to himself, this is my deer and no man shall touch it: I apprehend it would never asked by the next taker, what was the intention of this simpleton. The very act of letting it go is an abandonment, in contemplation of law. It is returned to the common stock.
When the act is in itself equivocal, and the identical property may be known, and resumed at pleasure, intention may be made a question; but when the abandonment is complete, when the subject of the property is put without the power of the owner, when it is thrown into the common stock, from which it cannot be distinguished, then there can be no question of intent. The act itself precludes it.
But it is said, that is not the case here; that in the particular spot where this bed or quantity of oysters was planted, there was no oysters to be found at the time of the planting; that these, therefore, could be resumed; that they were not thrown into the common stock. Let us examine this:
The oyster, like other animals, propagates its own species; it does so, particularly, as the case states, in this river. It does not appear when this bed was planted; it does not appear, whether the oysters taken by the defendant were of the old stock, or of the young brood, or whether of either one or the other; the [287] spawn of another bed, higher up the stream, might have lodged here and formed these; they are in no way [*] identified, they have no ear mark, they cannot be distinguished. To what purpose would it be for my simpleton to say, that there was no deer in that part of the forest where he let his loose.
Will it be said that the plaintiff is entitled not only to the old stock planted, but to the young brood also ? and that he having first occupied the ground, all accessions *373 belong to bim ? I apprehend not. The oyster, though once settled in the sand, is incapable of locomotion, yet from its mode of propagation, may people a whole river. Could it be said then, that the first planter might, by this means, secure to himself the oyster fishery in the whole extent of this water? And yet, if lie can appropriate one spot, why not another, and another, and another ?
I am informed that this business of planting oysters in these waters has been carried to great extent; that the beds now there, claimed by individuals on this principle, are numerous, and of great value; that this right has been recognized by a sort of tacit consent, and the property protected by mutual forbearance. And as it has a tendency to increase the quantity of oysters, and at the same time, with little or no injury to others, to promote the interest of those engaged in it, I wish it could have been supported and rendered permanent, but upon the whole case, I can see no principle upon which that can be done. I am of opinion,
1st. That in a common fishery, such as this is stated in the case to be, no man can appropriate to himself any particular shoal, bed, or spot, to the exclusion of others.
2d. That this throwing, or as it is called in the case, this planting of these oysters, was a returning of them to their proper element, to mix with their kind; that it was in contemplation of law, a complete abandonment.
3d. That if it were not so, yet there is nothing contained in the case to show that the oysters taken by the [*] defendants were the identical oysters planted by the plaintiff, in which he claims to have property. The circumstances stated do not prove it. In this the plaintiff has failed. Reverse.
Rossell, J.
— Was of opinion, that the judgment be affirmed.
Pennington,
J. — Questions that respect the right of fishery, are becoming more and more important in this State, *374 and require circumspection in their investigation, and deliberation in their determination. This is an action of trover for taking and converting a quantity of oysters, the property of the plaintiff below. [288] It comes before us on a case stated, to which we are confined. The taking and conversion is admitted; the property the only point in controversy. It is admitted, that the property of a quantity of oysters was in the plaintiff below; that he planted, as it is termed in the state of the case, these his oysters in the bed of a certain river in this State; that this river was a public navigable river and highway, where the tide flowed and reflowed, and in which, fish and oysters were found and taken as of right; that is to be understood, as I apprehend, of common right; that at the time of planting the oysters, there were no oysters to be found in the particular spot where they were planted. The time of planting, which might be of some use in investigating the question, is not stated. If a man should put down into this river a quantity of oysters for their preservation or improvement, in a part of the riyer where no oysters had ever grown, or ever would grow; and in such manner as to do no injury to the public; I should not consider it such an act as manifested in itself an intention to abandon the property in the oysters; but this case states, that in this river oysters were found, by which, I understand, that they naturally grew there. Now, although there may not have been any oysters on the particular spot where the oysters were put down, at the time of doing it, yet there may have grown oysters there since; in which case, he would not be [*] entitled to all the oysters found in the same bed; nor can I perceive how he could undertake to separate and identify them, without endless confusion and controversy. This case would resemble the case of a stranger voluntarily throwing his grain or money into my heap, when, from the difficulty of separation, caused by his own folly, I would be entitled to the *375 whole. It is not stated in this case that the same oysters that were put down by the plaintiff were taken up by the defendant. The case affords evidence from which a jury might have drawn such conclusion ; but I apprehend that a court, on a case stated, will not assume, by way of intendment, an important fact on which the cause turns; I consider a case stated, in the nature of a special verdict, in which the facts must be found, and not taken by inference or intendment. 1 think that, as the case is stated, the right of property in the oysters is not fully made out to be in the plaintiff below. This being essentially requisite to maintain an action of trover, the judgment that he obtained must be reversed.
How far an action may be maintained for oysters put down in a public river, where oysters do not grow, and no danger of an intermixture with other oysters, or an inter-meddling with a public right, is not, as I apprehend, before us — and of course, not to be [289] determined; whenever it does arise, it will require a more extensive view of the subject. To sustain this practice of planting oysters, as it is called, unequivocal evidence at least must be given, that no injury is done to individuals or the public; nor can it be considered as appropriating the soil of the bed of the river to the individual use of the person planting the oysters. Before this question is finally settled, I apprehend that the right to the soil of the bed of the river will be brought in question. In the present case, this right seems to be considered as in the public.
Judgment reversed.
[*] In the case of Richard Penn v. James Meeks, in which the opinion of the court was given in November Term, 1806, page 151, the Reporter, not having received Mr. Justice Rossell’s written opinion at the time the reports of that term went to press, made use of a short note of his own. In justice to Judge Rossell and the public, he thinks it his duty to insert that opinion in this place; it should have been inserted immediately after the state of the case, in page 153.
*376 Rossell, J. — The only difficulty I have felt on this question, arose from the idea that the book of judgments, from which the clerk of Cumberland has given a copy, might be considered as the record of the court of common pleas of that county: and if so, it would not be done away in the summary manner now pursued. On considering the subject, however, and finding that this entry in the book of judgments was not made by order, or under the direction of that court, and that all proceedings under it were without their control, consequently, and certainly, cannot be considered as their record; and it is, therefore, subject to the consideration of this court. In this view of the question, on an examination of the evidence accompanying these proceedings, I think the writing, styled a judgment, is totally void;, and that the money paid into this court by no means subject to its demands; and, indeed, there is on the face of these proceedings so much the appearance of trick, that this court is called on to protect their suitors against it. I see no way by which this can be done but by the present mode; and I am, therefore, of opinion, that the money paid by the sheriff of Cumberland into this court be delivered to the plaintiff.
Kirkpatrick, C. J. — Concurred.
Cited in Arnold v. Munday, 1 Halst. 1, 93, 112; Townsend v. Brown, 4 Zab 80.
Distinguished in State v. Taylor, 3 Dutch. 117, 121; Wooley v. Campbell, 8 Vr. 169.
Note. — The six following oases were not published in some copies of Vol. I., and the pages from 406 to 421, inclusive, are duplicates, which in this edition are distinguished thus, [*406e] to [*421e] for the extra cases, and [*406o] to [421o] for the original pagings.